## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KGR HOLDINGS, LLC and
KPF HOLDINGS, LLC,

              Plaintiffs,

    v.

JAL EQUITY CORP, KAPPA GRAPHICS,
LLC, and KAPPA PRODUCT
FULFILLMENT SERVICES, LLC,

              Defendants.

Case No. 1:25-cv-00101-MN
**PUBLIC VERSION**
**DATED: MARCH 24, 2025**

## ANSWER TO COMPLAINT
## AND AFFIRMATIVE DEFENSES

NOW COMES, Defendants JAL Equity Corp. ("JAL"), Kappa Graphics,

LLC ("Kappa Graphics"), and Kappa Product Fulfillment Services, LLC, ("Kappa

Services") (collectively, "Defendants"), by and through their undersigned attorney,

hereby deny all allegations set forth in the Complaint of Plaintiffs KGR Holdings,

LLC ("KGR") and KPF Holdings, LLC ("KPF") (collectively, "Plaintiffs"), except

as admitted herein:

## THE PARTIES

1. KGR is a Pennsylvania limited liability company with its principal place

of business in Fort Washington, Pennsylvania. The members of KGR are citizens of

Delaware, New Jersey and Pennsylvania.

**ANSWER:** Denied as Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations.

2. KPF is a Pennsylvania limited liability company with its principal place of business in Fort Washington, Pennsylvania. The members of KPF are citizens of New Jersey and Pennsylvania.

**ANSWER:** Denied as Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations.

3. JAL is a Nevada corporation with its principal place of business at 101 Workman Ave., Eureka, MO 63025.

**ANSWER:** Admitted.

4. Kappa Graphics is a Delaware limited liability company. On information and belief, no member of Kappa Graphics is a citizen of the same state as the members of KGR or KPF.

**ANSWER:** Denied, except insofar as to admit that Kappa Graphics is a Delaware limited liability company.

5. Services is a Pennsylvania limited liability company. On information and belief, no member of Services is a citizen of the same state as the members of KGR or KPF.

**ANSWER:** Denied, except insofar as to admit that Services is a Pennslyvania limited liability company.

## JURISDICTION AND VENUE

6. Plaintiffs bring this Complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

**ANSWER:** Admitted in part, denied in part. Defendants admit that Plaintiffs purport to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. Defendants further admit that Plaintiffs allege the amount in controversy exceeds $75,000. However, Defendants lack sufficient information to admit or deny the citizenship of all members of Plaintiffs' limited liability companies and therefore deny that diversity jurisdiction is properly established.

7. The parties also consented to and submitted to the exclusive jurisdiction of the federal courts situated in the State of Delaware in Section 8.5 of the Equity Purchase Agreement in connection with any actions, suits, or proceedings arising out of or relating to the Equity Purchase Agreement.

**ANSWER:** The allegations in this paragraph purport to characterize the Equity Purchase Agreement, which speaks for itself, to which Defendants refer for its true and correct contents and denies and any allegations in consistent therewith. In addition, the parties cannot confer subject matter jurisdiction on the Court.

## FACTUAL BACKGROUND

8. Prior to February 29, 2024, KGR owned all of the issued and outstanding equity interests of Kappa Graphics and KPF owned all of the issued and outstanding equity interests of Services.

**ANSWER:** Denied as Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations.

9. On February 29, 2024, KGR and KPF, as sellers, and JAL, as buyer, entered into an Equity Purchase Agreement pursuant to which KGR and KPF sold, transferred, assigned and delivered all of their respective equity interests in Kappa Graphics and Services to JAL. Equity Purchase Agreement, Section 1.1. A true and correct copy of the Equity Purchase Agreement is attached hereto as Exhibit A.

**ANSWER:** Admitted in part, denied in part. Defendants admit that on February 29, 2024, KGR and KPF, as sellers, and JAL, as buyer, entered into an Equity Purchase Agreement ("Agreement"). Defendants further admit that a true and correct copy of the Equity Purchase Agreement is attached as Exhibit A to the Complaint. To the extent the allegations in this paragraph purport to characterize the terms of the Agreement, Defendants state that the Agreement speaks for itself and deny any characterization inconsistent therewith.

10.    To secure the indemnification, payment, and performance obligations of KGR and KPF under the Equity Purchase Agreement, Section 1.6 of the Equity Purchase Agreement provided that JAL was entitled to withhold $700,000 (the "Holdback"). The Holdback was to be held and distributed by JAL

on the terms and conditions of Section 7.9 of the Equity Purchase Agreement. Equity Purchase Agreement, Section 1.6.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendant refers to the agreement for its true and correct contents and denies any allegations inconsistent therewith.

11.    Pursuant to Section 7.9 of the Equity Purchase Agreement, JAL was required to release to KGR, for the benefit of both KGR and KPF, $350,000 of the Holdback by December 4, 2024. Equity Purchase Agreement, Section 7.9.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendant refers to the agreement for its true and correct contents and denies any allegations inconsistent therewith.

12.    Pursuant to Section 7.3 of the Equity Purchase Agreement, JAL, Kappa Graphics and Services agreed to indemnify and hold KGR and KPF harmless from "Losses," which is defined as "all damages, losses, expenses, costs and Liabilities (including reasonable attorneys' fees and costs of collection)," arising or resulting from the failure of JAL to perform, or breach by JAL of any of, its covenants or agreements contained in the Equity Purchase Agreement (the "Sellers Indemnification Provision"). Equity Purchase Agreement, Sections 7.3 and 7.6.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendant refers to the

agreement for its true and correct contents and denies any allegations inconsistent therewith.

13.    As set forth in section 8.15 of the Equity Purchase Agreement, the parties agreed, in addition to any other remedy to which they are entitled at law or in equity, that any party would be entitled to seek specific performance and other equitable relief to prevent breaches of the Equity Purchase Agreement and to enforce its specific terms and provisions. Equity Purchase Agreement, Section 8.15.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendant refers to the agreement for its true and correct contents and denies any allegations inconsistent therewith.

14.    JAL did not release any funds from the Holdback to KGR on or before December 4, 2024, as was required by the Equity Purchase Agreement.

**ANSWER:** Admitted in part, denied in part. Defendants admit that JAL did not release any funds from the Holdback to KGR on or before December 4, 2024. However, Defendants deny the allegations in this paragraph purport to characterize the Agreement, which speaks for itself, to which Defendant refers for its true and correct contents and denies any allegations inconsistent therewith.

15.    After December 4, 2024, Plaintiffs sent multiple emails to JAL inquiring about the status of the $350,000 payment (the "Past Due Payment").

**ANSWER:** Admitted.

16.     On December 18, 2024, JAL responded to Plaintiffs' email, acknowledging that the Past Due Payment is due and owing, and stating that the Past Due Payment would be paid by December 31, 2024. A true and correct copy of this email correspondence is attached hereto as Exhibit B.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of the email attached to the complaint as Exhibit B, which speaks for itself, to which Defendant refers for its true and correct contents and denies any allegations inconsistent therewith.

17.     JAL did not pay the Past Due Payment or otherwise release any money from the Holdback to Plaintiffs on or before December 31, 2024.

**ANSWER:** Denied. The allegations assert that JAL was obligated to make the Past Due Payment or release any portion of the Holdback by December 31, 2024, without consideration of the conditions precedent and setoff rights under the Agreement.

18.     On January 6, 2025, counsel to the Plaintiffs sent a letter to JAL giving notice of Plaintiffs' claim to indemnity and demanding that JAL pay Plaintiffs the Past Due Payment plus $2,373.29 in interest (calculated at the current prime interest rate) and Plaintiffs' attorney fees of $5,000 in accordance with the Sellers Indemnification Provision by January 10, 2025 (the "Demand Letter"). A true and correct copy of this letter is attached hereto as Exhibit C.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of the letter attached to the complaint as Exhibit C, which

speaks for itself, to which Defendant refers for its true and correct contents and denies any allegations inconsistent therewith.

19.     In response to the Demand Letter, on January 6, 2025, JAL stated that the Past Due Payment would be paid to Plaintiffs by January 17, 2025. A true and correct copy of this correspondence is attached hereto as Exhibit D.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of the email attached to the complaint as Exhibit D, which speaks for itself, to which Defendant refers for its true and correct contents and denies any allegations inconsistent therewith.

20.     JAL did not pay the Past Due Payment or otherwise release any money from the Holdback to Plaintiffs on or before January 17, 2025.

**ANSWER:** Denied. The allegations assert that JAL was obligated to make the Past Due Payment or release any portion of the Holdback by January 17, 2025, without consideration of the conditions precedent and setoff rights under the Agreement.

21.     As of the date hereof, JAL has not paid KGR $350,000 as required by Section 7.3 of the Equity Purchase Agreement. The Past Due Payment remains due and payable to Plaintiffs. JAL is in material breach of its obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is

denied. By way of further answer, the Agreement referenced in this paragraph, read in its entirety, speaks for itself.

22.      As of the date hereof, neither JAL, Kappa Graphics nor Services has indemnified Plaintiffs for the Losses Plaintiffs have incurred as a result of JAL's breach of the Equity Purchase Agreement. Defendants are in material breach of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied. By way of further answer, the Agreement referenced in this paragraph, read in its entirety, speaks for itself.

## COUNT I

23.      Plaintiffs reallege and reincorporate each and every allegation set forth in the foregoing paragraphs.

**ANSWER:** Defendants incorporates by reference its answers to all foregoing paragraphs of Complaint.

24.      The Equity Purchase Agreement is a valid and binding contract between Plaintiffs and Defendants.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

25.      Plaintiffs have fulfilled all of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

26.     JAL has materially breached the Equity Purchase Agreement by failing to release to KGR $350,000 from the Holdback by December 4, 2024.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

27.     JAL, Kappa Graphics and Services have materially breached the Equity Purchase Agreement by failing to indemnify Plaintiffs for the Losses Plaintiffs have suffered as a result of JAL's breaches.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

28.     As a result of these defaults, Defendants are liable for all attorney fees Plaintiffs have incurred and will incur arising from the breaches, including all fees incurred preparing and prosecuting this lawsuit, as well as interest calculated at the prime interest rate.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

29.    As a direct and proximate cause of Defendants' material breach of the Equity Purchase Agreement, Plaintiffs have suffered, and continue to suffer, extensive damages, injury, and loss.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

## COUNT II

30.    Plaintiffs reallege and reincorporate each and every allegation set forth in the foregoing paragraphs.

**ANSWER:** Defendants incorporates by reference its answers to all foregoing paragraphs of Complaint.

31.    The Equity Purchase Agreement is a valid and binding contract between Plaintiffs and Defendants.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

32.    Plaintiffs have fulfilled all of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

33.    Under Section 7.3 of the Equity Purchase Agreement, Defendants must indemnify Plaintiffs for the Losses Plaintiffs have incurred as a result of Defendants' breaches of the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

34.    Defendants have not indemnified Plaintiffs for the Losses Plaintiffs have incurred. Plaintiffs' Losses continue to increase due to Defendants' breaches.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

35.    As a direct and proximate result of Defendants' failure to indemnify Plaintiffs, Plaintiffs have suffered, and continue to suffer, extensive damages, injury, and loss.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

## COUNT III

36.    Plaintiffs reallege and reincorporate each and every allegation set forth in the foregoing paragraphs.

**ANSWER:** Defendants incorporates by reference its answers to all foregoing paragraphs of Complaint.

37.     The Equity Purchase Agreement is a valid and binding contract between Plaintiffs and Defendants.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

38.     Plaintiffs have fulfilled all of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

39.     Under Section 8.15 of the Equity Purchase Agreement, the parties agreed that any party would be entitled to seek specific performance and other equitable relief to prevent breaches of the Equity Purchase Agreement and to enforce its specific terms and provisions.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

40.     Defendants have not fulfilled and are in breach of the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

41.    As a direct and proximate result of Defendants' breaches, Plaintiffs are entitled to specific performance of the Equity Purchase Agreement in the form of an order directing Defendants to pay Plaintiffs the Past Due Amount, plus interest due thereon from December 4, 2024, plus the fees and costs (including reasonable attorneys' fees) Plaintiffs incur enforcing their rights under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied.

## FIRST AFFIRMATIVE DEFENSE

Upon information and belief, the damages mentioned and described in Plaintiff's Complaint were caused in whole or in part by the culpable conduct of the Plaintiff or such other person or persons for whose acts Defendant was not responsible and over whom the said Defendant had no control, and without any culpability, fault, or negligence/carelessness on the part of the Plaintiff contributing thereto.

## SECOND AFFIRMATIVE DEFENSE

Upon information and belief, Plaintiff's claims are barred, in whole or in part, by its own words, actions, representations, misrepresentations and/or course of conduct. Upon information and belief, any and all damages to Plaintiff resulted from Plaintiff's own willful, deliberate and purposeful words, actions and/or course of conduct.

## THIRD AFFIRMATIVE DEFENSE

Upon information and belief, Plaintiff failed to satisfy conditions precedent requiring Defendant to tender performance. Specifically, the release of the holdback was contingent upon certain conditions, including the resolution of any outstanding indemnification claims.

## FOURTH AFFIRMATIVE DEFENSE

Defendant engaged in a reasonable and justified course of conduct and acted in good faith in the negotiation, execution, and performance of any alleged contracts/agreements.

## SIXTH AFFIRMATIVE DEFENSE

Upon information and belief, the alleged incident and damages were caused by a pre-existing, unforeseeable, independent, intervening, and/or superseding event beyond the control, and unrelated to any conduct of Defendant. Defendant's actions or omissions, if any, were thus superseded.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant performed all duties owed under the alleged contract/agreement, other than any duties which were prevented or excused or were not required due to the existence of an unsatisfied condition precedent, and therefore Defendant never breached the alleged subject agreements.

## EIGHTH AFFIRMATIVE DEFENSE

Defendant was prevented from performing under the contract/agreement by reason of Plaintiff's noncompliance with the alleged subject agreements, refusal to accept performance, and/or refusal of performance.

## NINTH AFFIRMATIVE DEFENSE

Defendant disputes the propriety, nature, and amount of the damages sought in Plaintiff's claims.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the doctrines of waiver and estoppel, laches, *in pari delicto*, and/or unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

The damages sought are not provided for by the agreement, if any, in question.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff has an adequate remedy at law.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff is contractually precluded from bringing claims other than those for indemnification.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert additional affirmative defenses as information is gathered through the discovery process.

## FIFTEENTH AFFIRMATIVE DEFENSE

Any obligations under any agreement, save for those of indemnification, are obligations only of JAL, not of the other two defendants.

**WHEREFORE**, Defendant denies any averment not specifically admitted herein and further denies liability to Plaintiff. Defendant respectfully requests that the Court: (i) dismiss Plaintiff's Complaint with prejudice, and/or (ii) or enter judgment in favor of Defendant and against Plaintiff, with an award of fees, costs and such other relief as the Court deems just and proper.

**BILLION LAW**

*/s/ Mark Billion*
Mark Billion
BILLION LAW
20184 Coastal Hwy., Ste. 205
Rehoboth Beach, DE 19971
302.674.2210

*Attorney for Defendants*

March 10, 2025