## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| KGR HOLDINGS, LLC AND KPF HOLDINGS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-00101- MN |
| JAL EQUITY CORP, KAPPA GRAPHICS, LLC, and KAPPA PRODUCT FULFILLMENT SERVICES, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## ANSWER TO SUPPLEMENTAL COMPLAINT
## AND AFFIRMATIVE DEFENSES

NOW COMES, Defendants JAL Equity Corp. ("JAL"), Kappa Graphics, LLC ("Kappa Graphics"), and Kappa Product Fulfillment Services, LLC, ("Kappa Services") (collectively, "Defendants"), by and through their undersigned counsel, hereby deny all allegations set forth in the Supplemental Complaint [D.I. 30] of Plaintiffs KGR Holdings, LLC ("KGR") and KPF Holdings, LLC ("KPF") (collectively, "Plaintiffs"), except as admitted herein:

## I.    THE PARTIES

1.    KGR is a Pennsylvania limited liability company with its principal place of business in Fort Washington, Pennsylvania. The members of KGR are citizens of Delaware, New Jersey and Pennsylvania.

**ANSWER:** Denied as Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations.

2.      KPF is a Pennsylvania limited liability company with its principal place of business in Fort Washington, Pennsylvania. The members of KPF are citizens of New Jersey and Pennsylvania.

**ANSWER:** Denied as Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations.

3.      JAL is a Nevada corporation with its principal place of business at 101 Workman Ave., Eureka, MO 63025.

**ANSWER:** Admitted.

4.      Kappa Graphics is a Delaware limited liability company. On information and belief, no member of Kappa Graphics is a citizen of the same state as the members of KGR or KPF.

**ANSWER:** Denied for want of information, except insofar as to admit that Kappa Graphics is a Delaware limited liability company.

5.      Services is a Pennsylvania limited liability company. On information and belief, no member of Services is a citizen of the same state as the members of KGR or KPF.

**ANSWER:** Denied, except insofar as to admit that Services is a Pennsylvania limited liability company.

## II.    JURISDICTION AND VENUE

6.      Plaintiffs bring this Complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

**ANSWER:** Admitted in part, denied in part. Defendants admit that Plaintiffs purport to invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. Defendants further admit that Plaintiffs allege the amount in controversy exceeds $75,000.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

2

However, Defendants lack sufficient information to admit or deny the citizenship of all members of Plaintiffs' limited liability companies and therefore deny that diversity jurisdiction is properly established.

7.      The parties also consented to and submitted to the exclusive jurisdiction of the federal courts situated in the State of Delaware in Section 8.5 of the Equity Purchase Agreement in connection with any actions, suits, or proceedings arising out of or relating to the Equity Purchase Agreement.

**ANSWER:** The allegations in this paragraph purport to characterize the Equity Purchase Agreement, which speaks for itself. Defendants refer to the Agreement for its true and correct contents and deny any allegations inconsistent therewith. In addition, the parties cannot confer subject matter jurisdiction on the Court.

## III.     FACTUAL BACKGROUND

8.      Prior to February 29, 2024, KGR owned all of the issued and outstanding equity interests of Kappa Graphics and KPF owned all of the issued and outstanding equity interests of Services.

**ANSWER:** Denied as Defendants lack sufficient information or knowledge to form a belief as to the truth of the allegations.

9.      On February 29, 2024, KGR and KPF, as sellers, and JAL, as buyer, entered into an Equity Purchase Agreement pursuant to which KGR and KPF sold, transferred, assigned and delivered all of their respective equity interests in Kappa Graphics and Services to JAL. Equity Purchase Agreement, Section 1.1. A true and correct copy of the Equity Purchase Agreement is attached hereto as Exhibit A.

**ANSWER:** Admitted in part, denied in part. Defendants admit that on February 29, 2024, KGR and KPF, as sellers, and JAL, as buyer, entered into an Equity Purchase Agreement. Defendants further admit that a true and correct copy of the Equity Purchase Agreement is attached as Exhibit A to the Supplemental Complaint. However, to the extent the allegations in this paragraph purport to characterize the terms of the Agreement, which speaks for itself, Defendants refer to it for its true and correct contents and deny any allegations inconsistent therewith.

10.    To secure the indemnification, payment, and performance obligations of KGR and KPF under the Equity Purchase Agreement, Section 1.6 of the Equity Purchase Agreement provided that JAL was entitled to withhold $700,000 (the "Holdback") from what it would pay Plaintiffs at closing. The Holdback was to be held and distributed by JAL to Plaintiffs on the terms and conditions of Section 7.9 of the Equity Purchase Agreement. Equity Purchase Agreement, Section 1.6.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendants refer to the Agreement for its true and correct contents and deny any allegations inconsistent therewith.

11.    Pursuant to Section 7.9 of the Equity Purchase Agreement, JAL was required to release $350,000 of the Holdback to KGR by December 4, 2024 and to release the remaining $350,000 of the Holdback to KGR by September 4, 2025. Equity Purchase Agreement, Section 7.9.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendants refer to the Agreement for its true and correct contents and deny any allegations inconsistent therewith. Footnote #1, to the extent included, is hereby denied as well.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

4

12.    Pursuant to Section 7.3 of the Equity Purchase Agreement, JAL, Kappa Graphics and Services agreed to indemnify and hold KGR and KPF harmless from "Losses," which is defined as "all damages, losses, expenses, costs and Liabilities (including reasonable attorneys' fees and costs of collection)," arising or resulting from the failure of JAL to perform, or breach by JAL of any of, its covenants or agreements contained in the Equity Purchase Agreement (the "Sellers Indemnification Provision"). Equity Purchase Agreement, Sections 7.3 and 7.6.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendants refer to the Agreement for its true and correct contents and deny any allegations inconsistent therewith.

13.    As set forth in section 8.15 of the Equity Purchase Agreement, the parties agreed, in addition to any other remedy to which they are entitled at law or in equity, that any party would be entitled to seek specific performance and other equitable relief to prevent breaches of the Equity Purchase Agreement and to enforce its specific terms and provisions. Equity Purchase Agreement, Section 8.15.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the Agreement, which speaks for itself. Defendants refer to the Agreement for its true and correct contents and deny any allegations inconsistent therewith.

14.    JAL did not release any funds from the Holdback to KGR on or before December 4, 2024, as was required by the Equity Purchase Agreement.

**ANSWER:** Admitted in part, denied in part. Defendants admit that JAL did not release any funds from the Holdback to KGR on or before December 4, 2024. However, to the extent the allegations in this paragraph purport to characterize the terms of the Agreement, which speaks for

1:25-cv-00101
Answer Supp. Compl.
8-6-25

5

itself, Defendants refer to it for its true and correct contents and deny any allegations inconsistent therewith.

15.    After December 4, 2024, Plaintiffs sent multiple emails to JAL inquiring about the status of the $350,000 payment (the "Past Due Payment").

**ANSWER:** Admitted.

16.    On December 18, 2024, JAL responded to Plaintiffs' email, acknowledging that the Past Due Payment is due and owing, and stating that the Past Due Payment would be paid by December 31, 2024. A true and correct copy of this email correspondence is attached hereto as Exhibit B.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of the email attached to the Supplemental Complaint as Exhibit B, which speaks for itself. Defendants refer to it for its true and correct contents and deny any allegations inconsistent therewith.

17.    JAL did not pay the Past Due Payment or otherwise release any money from the Holdback to Plaintiffs on or before December 31, 2024.

**ANSWER:**  Denied. The allegations assert that JAL was obligated to make the Past Due Payment or to release any portion of the Holdback by December 31, 2024, without consideration of the conditions precedent and setoff rights provided under the Agreement.

18.    On January 6, 2025, counsel to the Plaintiffs sent a letter to JAL giving notice of Plaintiffs' claim to indemnity and demanding that JAL pay Plaintiffs the Past Due Payment plus $2,373.29 in interest (calculated at the current prime interest rate) and Plaintiffs' attorney fees of $5,000 in accordance with the Sellers Indemnification Provision by January 10, 2025 (the "Demand Letter"). A true and correct copy of this letter is attached hereto as Exhibit C.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

6

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of the letter attached to the Supplemental Complaint as Exhibit C, which speaks for itself. Defendants refer to it for its true and correct contents and deny any allegations inconsistent therewith.

19.     In response to the Demand Letter, on January 6, 2025, JAL stated that the Past Due Payment would be paid to Plaintiffs by January 17, 2025. A true and correct copy of this correspondence is attached hereto as Exhibit D.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of the  Demand Letter attached to the Supplemental Complaint as Exhibit D, which speaks for itself. Defendants refer to it for its true and correct contents and deny any allegations inconsistent therewith.

20.     JAL did not pay the Past Due Payment or otherwise release any money from the Holdback to Plaintiffs on or before January 17, 2025.

**ANSWER:** Denied. The allegations assert that JAL was obligated to make the Past Due Payment or to release any portion of the Holdback by January 17, 2025, without consideration of the conditions precedent and setoff rights provided under the Agreement.

21.     As of the date hereof, JAL has not paid the Past Due Payment. JAL is in material breach of its obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied. By way of further answer, the Agreement referenced in this paragraph, read in its entirety, speaks for itself.

22.     As of the date hereof, neither JAL, Kappa Graphics nor Services has indemnified Plaintiffs for the Losses Plaintiffs have incurred as a result of JAL's breach of the Equity Purchase

1:25-cv-00101
Answer Supp. Compl.
8-6-25

7

Agreement. Defendants are in material breach of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied except insofar as to admit that Defendants have not paid any sums in  indemnification. By way of further answer, the Agreement referenced in this paragraph, read in its entirety, speaks for itself.

23.    On January 23, 2025, Plaintiffs filed this lawsuit against Defendants seeking, among other things, judgment in their favor, a monetary award for $350,000, pre and post-judgment interest and an award of attorney fees pursuant to the Equity Purchase Agreement.

**ANSWER:** Admitted in part, denied in part. Defendants admit that, on January 23, 2025, Plaintiffs filed this lawsuit against Defendants seeking, among other things, judgment in their favor, a monetary award for $350,000, pre- and post-judgment interest, and an award of legal fees. However, to the extent the allegations in this paragraph purport to characterize the relief sought or the terms of the Agreement, which speaks for itself, Defendants refer to the complaint and Agreement for their true and correct contents and deny any allegations inconsistent therewith.

24.    On June 27, 2025, in the course of supplementing their responses to Plaintiffs' discovery, Defendants asserted for the first time that Plaintiffs had breached Section 5.5(a)(iii) of the Equity Purchase Agreement. In general, Section 5.5(a)(iii) prohibits Plaintiffs and their Affiliates (as that term is defined in the Equity Purchase Agreement) from inducing or attempting to induce customers or prospective customer to use the services of an organization that competes with Kappa Graphics or Services or to cease using services provided by Kappa Graphics or Services.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

8

**ANSWER:** Admitted in part, denied in part. Defendants admit that, on June 27, 2025, they supplemented their responses to Plaintiffs' discovery and included a statement concerning a breach of Section 5.5(a)(iii) of the Equity Purchase Agreement. To the extent the allegations in this paragraph purport to characterize the substance or legal significance of that statement, or the terms of the Agreement, which speak for themselves, Defendants refer to their discovery responses and to the Agreement for their true and correct contents and deny any allegations inconsistent therewith.

25.    Defendants asserted that Plaintiffs' alleged prior breach of Section 5.5(a)(iii) "excuses Defendants' subsequent obligation to release the Holdback Amount," a term defined in the Equity Purchase Agreement as the full $700,000 due to Plaintiffs under Section 7.9.

**ANSWER:** Denied as stated. The allegations in this paragraph purport to characterize the content of Defendants' discovery responses, which speak for themselves. Defendants refer to their discovery responses and to the Agreement for their true and correct contents and deny any allegations inconsistent therewith.

26.    Defendants made this assertion before producing any documents to Plaintiffs or receiving any documents or information from Plaintiffs in the lawsuit, i.e., Defendants made this assertion at a time when they possessed no new information that would provide a basis to change their acknowledgment that the Past Due Payment is due and owing. See Exhibit B.

**ANSWER:** Denied as stated. The allegations in this paragraph constitute conclusory assertions based solely on the timing of Defendants' statements. Defendants refer to the emails attached as Exhibit B and to their discovery responses for their true and correct contents, and deny any allegations inconsistent therewith.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

9

27.    Defendants' assertion that Plaintiffs have breached Section 5.5(a)(iii) is false. Plaintiffs, the Estate of Nicholas Karabots and their Affiliates (as that term is defined in the Equity Purchase Agreement) have fully complied with Section 5.5(a)(iii).

**ANSWER:** To the extent that this paragraph constitutes a legal conclusion, no response is required. To the extent that a response is required, this paragraph is denied. By way of further answer, the Agreement referenced in this paragraph, read in its entirety, speaks for itself.

28.    By asserting that a non-existing breach of Section 5.5(a)(iii) "excuses Defendants' subsequent obligation to release the Holdback Amount," i.e., any portion of the $700,000 due to Plaintiffs under Section 7.9, Defendants confirmed they have no intent to and will not pay the $350,000 in Holdback that they must pay Plaintiffs on September 4, 2025.

**ANSWER:** Denied, except insofar as to admit that Defendants will not be releasing any additional funds.

29.    On July 9, 2025, Plaintiffs' counsel sent Defendants' counsel an email stating:

> On June 27, 2025, defendants served supplemental discovery responses that, for the first time, asserted that defendants were excused from performing under the Equity Purchase Agreement ("EPA") because of plaintiffs' purported and unspecified prior breaches of section 5.5(a)(iii) of the EPA. While plaintiffs reject any suggestion they have breached section 5.5(a)(iii), defendants' contrary view demonstrates that defendants have no intent to and will not release the remaining $350,000 of the Holdback Amount due to Sellers' Representative on September 4, 2025, as required by section 7.9(a) of the EPA.

> Plaintiffs demand assurance that defendants will release the remaining $350,000 of the Holdback Amount due to Sellers' Representative by September 4, 2025. This assurance must be made in writing, sent to undersigned counsel on or before July 14, 2025, and include sufficient evidence of defendants' ability to pay. Unless defendants inform us otherwise, plaintiffs will proceed based on their understanding that payment will not be made as contractually required.

**Exhibit E.**

1:25-cv-00101
Answer Supp. Compl.
8-6-25

10

**ANSWER:** Admitted.

30.     Plaintiffs sought adequate assurance of Defendants' performance through the July 9, 2025 email. Defendants have not responded to the July 9, 2025 email.

**ANSWER:** Admitted.

31.     Defendants' conduct demonstrates they are refusing to and will not perform their obligation to pay Plaintiffs $350,000 on September 4, 2025, and have repudiated their obligations regarding the $700,000 Holdback under the Equity Purchase Agreement.

**ANSWER:** Denied as stated. The allegations in this paragraph constitute speculative assertions regarding Defendants' intent. To the extent the allegations in this paragraph purport to characterize the Agreement, which speaks for itself, Defendants refer to it for its true and correct contents and deny any allegations inconsistent therewith.

## <u>COUNT I</u>
**Breach of Contract/Anticipatory Breach of Contract**

32.     Plaintiffs reallege and reincorporate each and every allegation set forth in the foregoing paragraphs.

**ANSWER:** Defendants incorporate by reference their answers to all foregoing paragraphs of the Supplemental Complaint.

33.     The Equity Purchase Agreement is a valid and binding contract between Plaintiffs and Defendants.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

34.     Plaintiffs have fulfilled all of their obligations under the Equity Purchase Agreement.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

11

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

35.     JAL has materially breached and/or anticipatorily breached the Equity Purchase Agreement by failing to release $350,000 from the Holdback to KGR by December 4, 2024, and by taking positions in this lawsuit that confirm JAL has no intention to and will not release the additional $350,000 from the Holdback that it owes KGR on September 4, 2025.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

36.     Plaintiffs have suffered Losses, as that term is defined in the Equity Purchase Agreement, in the amount of $700,000 as a result of JAL's failure to release and expressed intent not to release any of the $700,000 in Holdback to KGR.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

37.     JAL, Kappa Graphics and Services have materially breached the Equity Purchase Agreement by failing to indemnify Plaintiffs for the Losses Plaintiffs have suffered as a result of JAL's breaches.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

38.     As a result of these defaults, Defendants are liable for all attorney fees Plaintiffs have incurred and will incur arising from the breaches, including all fees incurred preparing and prosecuting this lawsuit, as well as interest calculated at the prime interest rate.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

12

39.     As a direct and proximate cause of Defendants' material breach of the Equity Purchase Agreement, Plaintiffs have suffered, and continue to suffer, extensive damages, injury, and loss.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

## COUNT II
### Indemnification

40.     Plaintiffs reallege and reincorporate each and every allegation set forth in the foregoing paragraphs.

**ANSWER:** Defendants incorporate by reference their answers to all foregoing paragraphs of the Supplemental Complaint.

41.     The Equity Purchase Agreement is a valid and binding contract between Plaintiffs and Defendants.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

42.     Plaintiffs have fulfilled all of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

43.     Under Section 7.3 of the Equity Purchase Agreement, Defendants must indemnify Plaintiffs for the Losses Plaintiffs have incurred as a result of Defendants' breaches of the Equity Purchase Agreement.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

13

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

44.     Defendants have not indemnified Plaintiffs for the Losses Plaintiffs have incurred and will incur. Plaintiffs' Losses continue to increase due to Defendants' breaches.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

45.     As a direct and proximate result of Defendants' failure to indemnify Plaintiffs, Plaintiffs have suffered, and continue to suffer, extensive damages, injury, and loss.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

<u>**COUNT III**</u>
**Specific Performance**

46.     Plaintiffs reallege and reincorporate each and every allegation set forth in the foregoing paragraphs.

**ANSWER:** Defendants incorporate by reference their answers to all foregoing paragraphs of the Supplemental Complaint.

47.     The Equity Purchase Agreement is a valid and binding contract between Plaintiffs and Defendants.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

48.     Plaintiffs have fulfilled all of their obligations under the Equity Purchase Agreement.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

14

49.     Under Section 8.15 of the Equity Purchase Agreement, the parties agreed that any party would be entitled to seek specific performance and other equitable relief to prevent breaches of the Equity Purchase Agreement and to enforce its specific terms and provisions.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

50.     Defendants have not fulfilled and are in breach of the Equity Purchase Agreement.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

51.     As a direct and proximate result of Defendants' breaches, Plaintiffs are entitled to specific performance of the Equity Purchase Agreement in the form of an order directing Defendants to pay Plaintiffs the Past Due Amount, plus interest due thereon from December 4, 2024, plus the $350,000 that must be released on September 4, 2025, plus any interest due thereon after September 4, 2025, plus the fees and costs (including reasonable attorneys' fees) Plaintiffs incur enforcing their rights under the Equity Purchase Agreement.

**ANSWER:** To the extent this paragraph constitutes a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs and the estate of Nicholas Karabots (the "Estate") are bound by the covenants of § 5.5 of the EPA. Defendants and the Estate, on information and belief, engaged in conduct that constitutes a material breach of the EPA (the "Culpable Conduct"). Specifically, Plaintiffs and the Estate directly or indirectly solicited and induced Kappa Publishing, Defendants' largest and longest-standing customer, to materially change and reduce its business relationship with Defendants. The basis for said information and belief is that Kappa Publishing, which accounted

for approximately 75% of the Defendant's business, moved their business from Defendants to affiliates of Plaintiffs and the Estate, including Midwest Printing and/or Craftline Fulfillment & Distribution within the restricted period set forth in § 5.5. At a point in the past, Kappa Publishing, Midwest Printing and Craftline Fulfillment & Distribution were all subsidiaries of the same entity.

Due to this Culpable Conduct, the damages mentioned and described in Plaintiffs' Supplemental Complaint were caused in whole or in part by the acts of Plaintiffs and/or persons over whom Defendants had no control and for whose actions Defendants are not responsible, and without any culpability, fault, or negligence on the part of Defendants contributing thereto.

### SECOND AFFIRMATIVE DEFENSE

Due to the Culpable Conduct, Plaintiffs failed to satisfy conditions precedent requiring Defendants to tender performance.

### THIRD AFFIRMATIVE DEFENSE

Defendants engaged in a reasonable and justified course of conduct and acted in good faith in the negotiation, execution, and performance of any alleged contracts/agreements.

### FOURTH AFFIRMATIVE DEFENSE

Defendants performed all duties owed under the alleged contract/agreement, other than any duties which were prevented or excused or were not required, and therefore Defendants never breached the alleged subject agreements.

### FIFTH AFFIRMATIVE DEFENSE

Due to the Culpable Conduct, Defendants were prevented from performing under the contract/agreement by reason of Plaintiffs' noncompliance with the alleged subject agreements, refusal to accept performance, and/or refusal of performance.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

16

<u>**SIXTH AFFIRMATIVE DEFENSE**</u>

Due to the Culpable Conduct, Defendants dispute the propriety, nature, and amount of the damages sought in Plaintiffs' claims.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

Due to the Culpable Conduct, Plaintiffs' claims are barred by the doctrine of unclean hands.

<u>**EIGHTH AFFIRMATIVE DEFENSE**</u>

Due to the Culpable Conduct, the damages sought are not provided for by the agreement, if any, in question.

<u>**NINTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs have an adequate remedy at law.

<u>**TENTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs are contractually precluded from bringing claims other than those for indemnification.

<u>**ELEVENTH AFFIRMATIVE DEFENSE**</u>

To the extent Plaintiffs seek to enforce a future contractual obligation—namely, the alleged payment due on September 4, 2025—such performance is excused under the doctrine of commercial impracticability. Continued performance has become commercially impracticable due to the Culpable Conduct.

<u>**TWELFTH AFFIRMATIVE DEFENSE**</u>

Defendants reserve the right to assert additional affirmative defenses as information is gathered through the discovery process.

1:25-cv-00101
Answer Supp. Compl.
8-6-25

17

## THIRTEENTH AFFIRMATIVE DEFENSE

Any obligations under any agreement, save for those of indemnification, are obligations only of JAL, not of the other two defendants.

WHEREFORE, Defendants deny any averment not specifically admitted herein and further denies liability to Plaintiffs. Defendants respectfully request that the Court: (i) dismiss Plaintiffs' Supplemental Complaint with prejudice, and/or (ii) or enter judgment in favor of Defendants and against Plaintiffs, with an award of fees, costs and such other relief as the Court deems just and proper.

Dated: AUGUST 6, 2025.

*/s/ Mark M. Billion*
Mark M. Billion (DE Bar No. 5263)
BILLION LAW
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: 302.428.9400
markbillion@billionlaw.com

*Counsel for Defendants*

1:25-cv-00101
Answer Supp. Compl.
8-6-25

18