# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KGR HOLDINGS, LLC AND<br>KPF HOLDINGS, LLC,<br><br>   Plaintiffs,<br><br> v.<br><br>JAL EQUITY CORP, KAPPA<br>GRAPHICS, LLC, and KAPPA<br>PRODUCT FULFILLMENT<br>SERVICES, LLC,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:25-cv-00101 (MN)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 3:** Identify all "culpable conduct" of Plaintiffs or such other person as alleged in the First Affirmative Defense of your Answer.

**ANSWER:** Plaintiffs and the estate of Nicholas Karabots (the "Estate") are bound by the covenants of § 5.5 of the EPA. Defendants and the Estate, on information and belief, engaged in conduct that constitutes a material breach of the EPA (the "Culpable Conduct"). Specifically, Defendants and the Estate directly or indirectly solicited and induced certain of Defendants' customers, including Defendants' largest customer Kappa Publishing, to materially change and reduce their business relationships with Defendants. The basis for said information and belief is that Kappa Publishing, which accounted for approximately 75% of the Defendant's business, moved their business from Defendants to affiliates of Plaintiffs and the

Estate, including Midwest Printing and/or Craftline Fulfillment & Distribution within the restricted period set forth in § 5.5. At a point in the past, Kappa Publishing, Midwest Printing and Craftline Fulfillment & Distribution were all subsidiaries of the same entity.

**INTERROGATORY NO. 4:** Identify all facts and legal bases for your contention that Plaintiffs' claims are barred, in whole or in part, as alleged in the Second Affirmative Defense of your Answer.

**ANSWER:** Plaintiffs' claims are barred by their own prior material breach of the EPA. The essential purpose of the EPA was for Defendants to acquire the entirety of the "Business," which is defined in the EPA to include its customer relationships and associated goodwill. Plaintiffs' solicitation of Defendants' largest customer, Kappa Publishing, in direct violation of the restrictive covenant in EPA § 5.5(a)(iii), goes to the root and essence of the agreement. This breach of a core component of the agreement constitutes a prior material breach, which excuses Defendants' subsequent obligation to release the Holdback Amount.

**INTERROGATORY NO. 5:** Identify all facts and legal bases for your contention that "any and all damages to Plaintiff[s] resulted from Plaintiffs own willful, deliberate and purposeful words, actions and/or course of conduct" as alleged in the Second Affirmative Defense of your Answer.

**ANSWER:** The damages Plaintiffs allege in their Complaint—namely, the non-payment of the $350,000 portion of the Holdback Amount—are a direct and proximate result of the Culpable Conduct set forth in Interrogatory #3. As a legal consequence

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KGR HOLDINGS, LLC AND KPF HOLDINGS, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>JAL EQUITY CORP, KAPPA GRAPHICS, LLC, and KAPPA PRODUCT FULFILLMENT SERVICES, LLC,<br><br>        Defendants. | ) ) ) ) ) ) ) ) Case No. 1:25-cv-00101- MN ) ) ) ) ) ) ) |

### DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS'
### SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION
### AND FIRST REQUESTS FOR ADMISSION

By responding, the Defendants JAL Equity Corp. ("JAL"), Kappa Graphics, LLC ("Kappa Graphics"), and Kappa Product Fulfillment Services, LLC, ("Kappa Services") (collectively, "Defendants"), by and through their undersigned counsel, do not waive any right, whenever raised and however based, to (a) object to the competency, relevancy, materiality, privilege, status, or admissibility of the information provided herein; (b) object to the use of the information provided herein in any filing, document, or proceeding; and/or (c) object to any demand for further responses to these requests. No objection made herein, or lack thereof, is an admission by the Defendants as to the existence or non-existence of any documents or information. Defendants reserve the right to supplement these responses.

[Remainder of Page Left Intentionally Blank]

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

1

## I.    INTERROGATORIES

**INTERROGATORY NO. 17**: Identify every one of "Defendants' customers" and any Excluded
Persons (as that term is defined in the Equity Purchase Agreement) that you contend Plaintiffs, the
estate of Nicholas Karabots (the "Estate") or their Affiliates (as that term is defined in the Equity
Purchase Agreement) or agents "directly or indirectly solicited and induced … to materially
change and reduce their business relationships with Defendants" as asserted in Defendants' answer
to interrogatory 3 in Defendants' Supplemental Responses and Objections to Plaintiffs' First Set
of Interrogatories (the "Supplemental Interrogatory Responses").

**ANSWER**:    Defendants refer Plaintiffs to their response to Interrogatory No. 3 in the
Supplemental Interrogatory Responses, which remains accurate and is incorporated herein by
reference. Without limitation, Defendants identify "Kappa Publishing" as the sole customer that
was directly or indirectly solicited and induced by Plaintiffs, the Estate, and/or their Affiliates or
agents to materially change and reduce its business relationship with Defendants.

On information and belief, Kappa Publishing accounted for approximately 75% of Defendants'
business at or near the time of closing. Subsequent to closing and within the restricted period
defined under § 5.5 of the Equity Purchase Agreement ("EPA"), Kappa Publishing transitioned
significant lines of business away from Defendants and toward Midwest Printing and/or Craftline
Fulfillment & Distribution, entities that were—at the time—Affiliates of the Estate and/or
Plaintiffs. This diversion of business constitutes a material reduction in the customer relationship
contemplated under the EPA.

Discovery is ongoing, and Defendants reserve the right to supplement or amend this response as
additional information becomes available.

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

2

**INTERROGATORY NO. 18**: Identify each act that Plaintiffs, the Estate or their Affiliates (as that term is defined in the Equity Purchase Agreement) or agents took that "directly or indirectly solicited and induced certain of Defendants' customers, including Defendants' largest customer Kappa Publishing," or any other Excluded Person (as that term is defined in the Equity Purchase Agreement "to materially change and reduce their business relationships with Defendants" as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses.

**ANSWER**: Defendants refer Plaintiffs to their response to Interrogatory No. 3 in the Supplemental Interrogatory Responses, which is incorporated herein by reference. Without limitation, and based on information currently known and reasonably available to Defendants, Defendants identify the following conduct that, individually or collectively, constituted direct or indirect solicitation and inducement of Kappa Publishing:

- After the Closing Date, Kappa Publishing materially reduced its volume of business with Defendants and began transitioning significant components of its printing and fulfillment work to Midwest Printing and/or Craftline Fulfillment & Distribution, entities believed to be Affiliates of the Estate and/or Plaintiffs within the meaning of the Equity Purchase Agreement.

- On information and belief, and based on the sudden and substantial nature of the shift in business, Defendants contend that this transition was not initiated independently by Kappa Publishing, but was the result of solicitation or inducement by Plaintiffs, the Estate, and/or their agents or Affiliates in violation of Section 5.5(a)(iii) of the EPA.

- Defendants further contend that the transition was facilitated by pre-existing relationships and shared ownership or control between Kappa Publishing, Midwest Printing, and

Craftline Fulfillment, which gave Plaintiffs and/or their Affiliates the means and opportunity to effectuate the interference.

Discovery is ongoing, and Defendants reserve the right to amend or supplement this response as additional evidence becomes available.

**INTERROGATORY NO. 19**: Identify when "Kappa Publishing … moved their (sic) business from Defendants to affiliates of Plaintiffs" as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses.

**ANSWER**:  Upon information and belief, the transition of work by Kappa Publishing away from Defendants began to materialize after the Closing Date of the Equity Purchase Agreement, which was February 29, 2024. The transition unfolded progressively over the subsequent weeks and months, with a significant decline in printing and fulfillment orders from Kappa Publishing observed by Defendants in or around **March to May 2025.**

While Defendants are presently unable to identify the precise date on which Kappa Publishing formally reallocated its work to Midwest Printing and/or Craftline Fulfillment & Distribution, Defendants contend that the transition occurred during the restricted period contemplated under Section 5.5(a) of the Equity Purchase Agreement, and that such conduct constitutes a breach of the non-solicitation and restrictive covenants provisions set forth therein.

Defendants reserve the right to amend or supplement this response pursuant to their continuing discovery obligations and as additional evidence becomes available, including documents and communications in the possession of Plaintiffs, the Estate, or their Affiliates.

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

4

**INTERROGATORY NO. 20**: Identify the basis for the statement "Kappa Publishing, Midwest Printing and Craftline Fulfillment & Distribution were all subsidiaries of the same entity" as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses.

**ANSWER**:  Defendants incorporate by reference their response to Interrogatory No. 3 in the Supplemental Interrogatory Responses. Based on information presently known and reasonably available to them, Defendants state that their assertion regarding the prior affiliation or common ownership between Kappa Publishing, Midwest Printing, and Craftline Fulfillment & Distribution is based on:

-   Defendants' historical understanding and industry knowledge regarding the business structure of these entities, including past references to common ownership, overlapping management, or shared control, communicated in the ordinary course of business;

-   The pattern and timing of Kappa Publishing's transition following the Closing Date, including its abrupt reduction in business with Defendants and the redirection of such work to Midwest Printing and/or Craftline Fulfillment & Distribution, which, on information and belief, reflects coordinated conduct between entities operating under shared ownership or control;

-   The operational and logistical integration observed by Defendants over time between Kappa Publishing and the other two entities, which further supports the reasonable belief that such entities were historically affiliated or jointly managed.

This response is partial and made in good faith based on currently available information. Discovery is ongoing, and Defendants reserve the right to amend or supplement this response as additional information becomes available.

**INTERROGATORY NO. 21**: Identify all "conduct" by Plaintiffs, the Estate or their Affiliates (as that term is defined in the Equity Purchase Agreement) or agents "that constitutes a material breach of the" Equity Purchase Agreement as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses.

**ANSWER**: Based on information currently known and reasonably available, Defendants identify the following conduct by Plaintiffs, the Estate, and/or their Affiliates or agents that, individually or collectively, constitutes a material breach of the Equity Purchase Agreement:

Following the Closing Date, Kappa Publishing, Defendants' largest and longest-standing customer and an "Excluded Person" within the meaning of §5.5(a)(iii) of the Equity Purchase Agreement, materially reduced its commercial engagement with Defendants. This reduction coincided with the redirection of substantial printing and fulfillment services to Midwest Printing and/or Craftline Fulfillment & Distribution—entities believed by Defendants to be Affiliates of the Estate and/or Plaintiffs based on the structure and context of the transaction, including but not limited to references in Article I and §5.5 of the Equity Purchase Agreement.

On information and belief, such redirection was not independently initiated by Kappa Publishing, but resulted from direct or indirect solicitation and inducement by Plaintiffs, the Estate, or their Affiliates or agents, in violation of the non-solicitation and non-interference obligations imposed by §5.5(a)(iii) of the Equity Purchase Agreement.

In particular, the timing, magnitude, and apparent coordination of this customer transition suggest pre-existing relationships and shared ownership or control among Kappa Publishing, Midwest, and Craftline, which were leveraged by Plaintiffs and/or their Affiliates to materially interfere with Defendants' business relationships.

Defendants continue to investigate these matters and conduct discovery. This response is partial and made in good faith based on currently available information. To the extent additional communications, documents, or facts responsive to this Interrogatory become known, Defendants will timely supplement this response.

**INTERROGATORY NO. 22**: For each Request for Admission that you deny in full or in part, set forth all grounds for your denial.

**ANSWER**: Defendants refer Plaintiffs to their Responses and Objections to Plaintiffs' First Set of Requests for Admission, served concurrently herewith, which set forth the grounds for each admission or denial. Defendants incorporate those responses by reference as if fully set forth herein.

## II.    REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 25**: All Documents and Communications concerning or supporting the assertion in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses that Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents "directly or indirectly solicited and induced certain of Defendants' customers, including Defendants' largest customer Kappa Publishing, to materially change and reduce their business relationships with Defendants."

**ANSWER**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all Documents and Communications concerning" the referenced assertion without reasonable limitations as to time, scope, or subject matter. Defendants further object to the Request to the extent it seeks documents protected by the attorney-client privilege or the work product doctrine.

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

7

Subject to and without waiving the foregoing objections or any other applicable privileges, Defendants will produce non-privileged documents and communications responsive to this Request located after a reasonable search of the electronic files of Eran Salu and Rachel Grossfeld.

All documents withheld on the basis of privilege or work product will be identified in a privilege log consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure. Defendants reserve the right to amend or supplement this response as discovery proceeds and additional information becomes available, pursuant to Rule 26(e).

**REQUEST NO. 26**: All Documents and Communications concerning or identifying lost sales that purportedly arise from efforts of Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents to "directly or indirectly solicit[] and induce[] certain of Defendants' customers, including Defendants' largest customer Kappa Publishing, to materially change and reduce their business relationships with Defendants."

**ANSWER**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all Documents and Communications concerning or identifying lost sales" without reasonable limitations as to time period or scope. Defendants further object to the extent the Request seeks documents protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving the foregoing objections or any other applicable privileges, Defendants will produce non-privileged documents and communications responsive to this Request located after a reasonable search of the electronic files of Eran Salu and Rachel Grossfeld.

All documents withheld on the basis of privilege or work product will be identified in a privilege log consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure. Defendants reserve the

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

8

right to amend or supplement this response as discovery proceeds and additional information becomes available, pursuant to Rule 26(e).

**REQUEST NO. 27**: All Documents and Communications concerning or identifying each act that Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents took that "directly or indirectly solicited and induced certain of Defendants' customers, including Defendants' largest customer Kappa Publishing, to materially change and reduce their business relationships with Defendants" as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses.

**ANSWER**: Defendants object to this Request as duplicative of Request No. 25, which seeks "all Documents and Communications concerning or supporting the assertion in Defendants' answer to interrogatory 3" regarding the alleged solicitation and inducement of Defendants' customers, including Kappa Publishing. To the extent this Request seeks the same or substantially similar documents, it is unreasonably cumulative, duplicative and unduly burdensome within the meaning of Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure.

Defendants further object to the Request as overbroad and not proportional to the needs of the case to the extent it seeks "all Documents and Communications" concerning or identifying "each act" allegedly taken by Plaintiffs, the Estate, or their Affiliates or agents, without reasonable limitations as to time, subject matter, or custodians. Defendants also object to the extent the Request seeks documents protected by the attorney-client privilege or the work product doctrine.

**REQUEST NO. 28**: All Documents and Communications concerning or supporting the assertion in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses that "Kappa Publishing … moved their (sic) business from Defendants to affiliates of Plaintiffs[.]"

**ANSWER**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all Documents and Communications concerning or supporting" the referenced assertion without reasonable limitations as to time period, custodians, or subject matter. Defendants further object to the extent the Request seeks documents protected by the attorney-client privilege or the work product doctrine.

Subject to and without waiving the foregoing objections or any other applicable privileges, Defendants will produce non-privileged documents and communications responsive to this Request located after a reasonable search of the electronic files of Eran Salu and Rachel Grossfeld.

All documents withheld on the basis of privilege or work product will be identified in a privilege log consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure. Defendants reserve the right to amend or supplement this response as discovery proceeds and additional information becomes available, pursuant to Rule 26(e).

**REQUEST NO. 29**: All Documents and Communications concerning any "conduct" by Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents "that constitutes a material breach of the" Equity Purchase Agreement as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses.

**ANSWER**: Defendants object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all Documents and Communications concerning any 'conduct'" by Plaintiffs, the Estate, their Affiliates, or agents, without reasonable limitation as to time period, subject matter, or relevance. Defendants further object to the extent the Request seeks documents protected by the attorney-client privilege or work product doctrine.

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

10

Subject to and without waiving the foregoing objections or any other applicable privileges, Defendants will produce non-privileged documents and communications responsive to this Request located after a reasonable search of the electronic files of Eran Salu and Rachel Grossfeld.

All documents withheld on the basis of privilege or work product will be identified in a privilege log consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure. Defendants reserve the right to amend or supplement this response as discovery proceeds and additional information becomes available, pursuant to Rule 26(e).

**REQUEST NO. 30**: All Communications between Defendants and any Excluded Persons (as that term is defined in the Equity Purchase Agreement) concerning (1) Defendants increasing the price charged to the Excluded Person (2) changing any non-price term of the relationship between Defendants and an Excluded Person, or (3) an Excluded Person terminating, diminishing or changing its relationship with Defendants.

**ANSWER**: Defendants will produce non-privileged documents and communications responsive to this Request, located after a reasonable search.

All documents withheld on the basis of privilege or work product will be identified in a privilege log consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure. Defendants reserve the right to amend or supplement this response as discovery proceeds and additional information becomes available, pursuant to Rule 26(e).

### III.    REQUEST FOR ADMISSIONS

**RFA 1**: Admit that the entity referred to as "Kappa Publishing" in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses is a reference to Kappa Publishing Group Inc.

1:25-cv-00101- MN
Defs. Response to 2nd Irrs. And RFPs
8-6-2025

11

**ANSWER**: Admitted.

**RFA 2**: Admit that the entity referred to as "Midwest Printing" in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses is a reference to Midwest Printing and Distribution.

**ANSWER**: Pursuant to Rule 36(a)(4) of the Federal Rules of Civil Procedure, Defendants state that, after a reasonable inquiry, they lack knowledge or information sufficient to admit or deny this Request and therefore deny the same. While Interrogatory No. 3 in the Supplemental Interrogatory Responses referenced an entity identified as "Midwest Printing," Defendants are unable to determine, based on the information currently available, whether that entity is the same as "Midwest Printing and Distribution" as referenced in this Request.

**RFA 3**: Admit that the entity referred to as "Craftline Fulfillment & Distribution" in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses is a reference to Craftline Fulfillment & Distribution, LLC.

**ANSWER**: Admitted.

Dated: AUGUST 6, 2025.

*/s/ Mark M. Billion*
Mark M. Billion (DE Bar No. 5263)
BILLION LAW
20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971
Tel: 302.428.9400
markbillion@billionlaw.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KGR HOLDINGS, LLC AND KPF HOLDINGS, LLC, | ) ) ) |
| Plaintiffs, | ) Case No. 1:25-cv-00101- MN ) |
| v. | ) **AFFIDAVIT OF ERAN SALU IN** ) **SUPPORT OF DEFENDANTS'** ) **RESPONSES TO PLAINTIFFS'** |
| JAL EQUITY CORP, KAPPA GRAPHICS, LLC, and KAPPA PRODUCT FULFILLMENT SERVICES, LLC, | ) **SECOND SET OF** ) **INTERROGATORIES** ) ) |
| Defendants. | ) ) |

**Eran Salu,** being duly sworn, deposes and says:

1. I am the President of the captioned Defendants and make this affidavit in that capacity.

2. I hereby acknowledge that I have reviewed the responses to Plaintiff's Second set of Interrogatories.

3. I confirm that the information provided is accurate and complete to the best of my knowledge.

4. I further acknowledge that these responses are submitted in compliance with the applicable rules and regulations.

5. I understand that any inaccuracies or omissions may be subject to correction and further legal review.

6. This affidavit is executed to affirm my acknowledgment of these responses.

_____
**Eran Salu**

**JURAT**

State of _____ mo _____

County of _____ St. louis _____

I am a notary public and, correspondingly, an officer authorized to administer oaths. This document and the statements therein were sworn and subscribed before me on August 6, 2025, by ERAN SALU, who is personally known to me on the basis of satisfactory evidence to be the person who appeared before me.

ERAN SALU made the oath necessary to so swear and subscribe this affidavit.

ERAN SALU was sworn under oath in my presence; stated that the facts in the affidavit and its exhibits are true, correct, and of his own knowledge in my presence; and signed this affidavit in my presence.

_____, Notary Public

My commission expires: _10 | 11 | 2027_

Stamp/Seal

SHARVIL PATEL
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 19606880
My Commission Expires 10-01-2027