# EXHIBIT 8



# BILLION LAW

September 11, 2025.

**VIA EMAIL (todd.schiltz@faegredrinker.com)**
**Todd C. Schiltz**
**Faegre Drinker Biddle & Reath LLP**
**222 Delaware Avenue, Suite 1410**
**Wilmington, Delaware 19801**

> RE:  KGR Holdings, LLC v. JAL Equity Corp.
>       Plaintiffs' Rule 30(b)(6) Deposition Notices

Dear Todd:

Thank you for your letter of September 4, 2025. We appreciate your constructive effort to narrow the proposed Rule 30(b)(6) deposition topics and avoid unnecessary motion practice. Your withdrawal of thirteen topics and revision of many others is a productive step.

We can agree to the vast majority of the topics as revised or retained in your Exhibit A. However, as discussed, several topics remain problematic as they improperly seek legal conclusions and contention-based testimony rather than discoverable facts.

Specifically, we must reject revised JAL 3 as well as the retained JAL 11 and 13.[1] A topic seeking testimony on our client's "interpretation" of its contractual obligations (JAL 3) is a textbook contention topic. Similarly, asking for the "reasons why payment was not made" (JAL 11 and 13) is not a simple factual inquiry; it is a request for the legal justification and rationale for our client's position in this litigation. That said, if you have a solution in the form of updated wording, we are more than willing to work with you.

With respect to JAL 17-19, we will permit testimony as to the identity of any customer of JAL, KG or KP who was allegedly solicited by any other EPA signatory or anyone we believe is connected with an EPA signatory, the individuals who allegedly performed the solicitation, and the specific acts that constituted the solicitation. However, we will not consent to any testimony about what we contend the EPA means or why those facts constitute a breach of the same. By the same token, we will permit testimony as to any indemnification claims that payments are being withheld for, but we will not permit testimony as to the construction of the EPA.

With respect, with respect to the production issue raised in August, should you wish to propose additional search terms, we are willing to consider the same, and we do believe that we have identified the correct custodians. That said, we do believe that the search terms that were previously supplied were sufficient. In any event, the Defendants are not knowingly holding any other responsive documents and will provide the following documents:

- All agreements with Kappa Publishing since 2024; and
- Evidence of all pricing adjustments during that time.

---

[1] All topics are referenced by their JAL number. The corresponding KG and KP topics are incorporated by reference. Please let me know if this creates any confusion.

Finally, please provide the date on which you wish to depose Mr. Salu so that we can get that finalized.

In sum, I believe that this responds to your most recent correspondence concerning the matters outstanding.

Regards,

*Mark M. Billion*

# EXHIBIT 9

**Schiltz, Todd C.**

| | |
|---|---|
| **From:** | Schiltz, Todd C. |
| **Sent:** | Monday, September 15, 2025 4:46 PM |
| **To:** | Mark Billion |
| **Subject:** | RE: JAL Equity |

Thanks, Mark.

Plaintiffs' document requests seek documents beyond those referencing Kappa Publishing and potentially beyond those in the possession of Mr. Salu and Ms. Grossfeld. Plaintiffs seek documents and communications:

- Supporting defendants' assertion that "Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents 'directly or indirectly solicited and induced certain of Defendants' customers, including Defendants' largest customer Kappa Publishing, to materially change and reduce their business relationships with Defendants.'" RFP 25
- "identifying each act that Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents took that 'directly or indirectly solicited and induced certain of Defendants' customers, including Defendants' largest customer Kappa Publishing, to materially change and reduce their business relationships with Defendants' as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses." RFP 27 and
- "concerning any 'conduct' by Plaintiffs, the Estate or their Affiliates (as that terms is defined in the Equity Purchase Agreement) or agents 'that constitutes a material breach of the' Equity Purchase Agreement as asserted in Defendants' answer to interrogatory 3 in the Supplemental Interrogatory Responses." RFP 29.

These are the materials we believe should be searched for manually. That manual search should not be limited to Mr. Salu and Ms. Grossfeld if defendants have reason to believe that other employees or agents might have responsive documents. If you can confirm you are manually searching for these materials with all pertinent custodians, then we need not raise this issue with the Court.

As discussed on our call, can you confirm that defendants will search for documents reflecting changes to non-price terms between Kappa Publishing and Kappa Graphics?

With respect to Mr. Salu, can you clarify what you mean by he "will be prepared to testify as to the deal terms." I assume you will stand on your position that questions regarding compliance with or breach of those terms remain areas where Mr. Salu cannot be questioned, but please correct me if I am wrong.

For the record, Kappa Publishing had a prior relationship with affiliates of plaintiffs but that relationship ended in March 2022 when those affiliates sold Kappa Publishing to a third party, and the "seller entities" you contend Kappa Publishing "transitioned to," i.e., Midwest and the Craftline Entities, are either entirely unrelated to sellers (Midwest) or ceased operations in about July 2024 (Craftline Entities) when they voluntarily transferred their assets to 1st Source Bank. See plaintiffs' responses to defendants' interrogatories where much of this is set forth.

**Todd C. Schiltz**
Partner
Pronouns: he/him/his
todd.schiltz@faegredrinker.com
Connect: vCard

+1 302 467 4225 direct

1

**Faegre Drinker Biddle & Reath LLP**
222 Delaware Ave., Ste. 1410
Wilmington, Delaware 19801, USA

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.

**From:** Mark Billion <markbillion@billionlaw.com>
**Sent:** Monday, September 15, 2025 4:16 PM
**To:** Schiltz, Todd C. <todd.schiltz@faegredrinker.com>
**Subject:** JAL Equity

**This Message originated outside your organization.**

---

Todd,

With respect to Kappa Publishing, we have no issue doing a manual production (i.e., inquiring of the two custodians to see what documents they can recall). I have received some this afternoon and hope to produce them tomorrow. In addition, Salu will be prepared to testify as to the deal terms.

With respect to the solicitation of KP, my client is well aware that a) KP has pre-existing relationships with both the Sellers and the seller entities that it ultimately transitioned to. In addition, KP massively scaled back contemporaneously with this fee dispute arising with KGR.

Mark

--
Mark M. Billion
Book An Appointment: https://calendly.com/markbillion

**20184 Coastal Hwy. Suite 205**
**Rehoboth Beach, DE 19971**
**302.428.9400**
markbillion@billionlaw.com

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

Billion Law is the d/b/a for Billion, LLC, a Delaware entity.

# EXHIBIT 10

## Exhibit 10 – Non-Objected to Rule 30(b)(6) Topics

1. JAL's efforts to acquire the Craftline Entities or their assets;

2. Kappa Graphics/Kappa Product's knowledge of any payments Kappa Graphics or Kappa Product made to Plaintiffs pursuant to Section 7.3 of the Equity Purchase Agreement;

3. JAL's knowledge of any assets currently owned by the Craftline Entities;

4. JAL's knowledge of any business activities of the Craftline Entities from January 1, 2024 to the present;

5. JAL's knowledge of any disposition of assets by the Craftline Entities from January 1, 2024 to the present;

6. [JAL, Kappa Graphics and Kappa Product's] knowledge of any voluntary transfer of assets from the Craftline Entities to 1st Source Bank;

7. [JAL, Kappa Graphics and Kappa Product's] knowledge of what 1st Source Bank did with any assets that the Craftline Entities voluntarily transferred to 1st Source Bank.

8. [JAL, Kappa Graphics and Kappa Product's] knowledge of Midwest's business.

9. [JAL, Kappa Graphics and Kappa Product's] knowledge of who owns Midwest.

10. [JAL, Kappa Graphics and Kappa Product's] knowledge of Midwest's current relationship with Plaintiffs, the Estate of Nicholas Karabots, or their Affiliates (as that term is defined in the Equity Purchase Agreement).

11. [JAL, Kappa Graphics and Kappa Product's] knowledge of any payments JAL made to plaintiffs pursuant to Section 7.9(a) of the Equity Purchase Agreement.

12. [JAL, Kappa Graphics and Kappa Product's] knowledge of any "amounts paid from the Holdback Amount to resolve any settled claims for indemnification by the Sellers" pursuant to Section 7.9(a)(x) of the Equity Purchase Agreement.

13. [JAL, Kappa Graphics and Kappa Product's] knowledge of any "unpaid amounts related to any unresolved indemnification claims" pursuant to Section 7.9(a)(y) of the Equity Purchase Agreement

14. The December 18 Email acknowledging that the first $350,000 of the Holdback is due and owing to Plaintiffs and stating that payment would be made by December 31, 2024.

15. The January 6 Email stating that the first $350,000 of the Holdback would be paid to Plaintiffs by January 17, 2025.

16. The identity of any Excluded Person that Plaintiffs or the Estate of Nicholas Karabots, either directly or through an Affiliate, called on, sold to, performed services for, served, attempted to persuade, contacted, communicated with, or solicited "in order to induce or attempt to induce such Excluded Person to utilize the services of a Competing Business or cease doing business with the Company or any of the JAL Affiliates, or in any way materially interfere with the relationship between any excluded Person and the Company and the JAL Affiliates." (All capitalized terms have the meaning given to them in the Equity Purchase Agreement).

17. The identity of every person or entity who allegedly called on, sold to, performed services for, served, attempted to persuade, contacted, communicated with, or solicited an Excluded Person for Plaintiffs or the Estate of Nicholas Karabots "in order to induce or attempt to induce such Excluded Person to utilize the services of a Competing Business or cease doing business with the Company or any of the JAL Affiliates, or in any way materially interfere with the relationship between any excluded Person and the Company and the JAL Affiliates." (All capitalized terms have the meaning given to them in the Equity Purchase Agreement).

18. The acts each person who allegedly called on, sold to, performed services for, served, attempted to persuade, contacted, communicated with, or solicited an Excluded Person for Plaintiffs or the Estate of Nicholas Karabots "in order to induce or attempt to induce such Excluded Person to utilize the services of a Competing Business or cease doing business with the Company or any of the JAL Affiliates, or in any way materially interfere with the relationship between any excluded Person and the Company and the JAL Affiliates" took or engaged in to call on, sell to, perform services for, serve, attempt to persuade, contact, communicate with, or solicit an Excluded Person for Plaintiffs or the Estate of Nicholas Karabots "in order to induce or attempt to induce such Excluded Person to utilize the services of a Competing Business or cease doing business with the Company or any of the JAL Affiliates, or in any way materially interfere with the relationship between any excluded Person and the Company and the JAL Affiliates." (All capitalized terms have the meaning given to them in the Equity Purchase Agreement).

19. [JAL, Kappa Graphics and Kappa Product's] knowledge of any relationship between Plaintiffs and Kappa Publishing from March 8, 2022 to the present.

20. [JAL, Kappa Graphics and Kappa Product's] knowledge of any relationship between Plaintiffs and the Craftline Entities from February 29, 2024 to the present.

21. [JAL, Kappa Graphics and Kappa Product's] knowledge of any relationship between Plaintiffs and Midwest from February 29, 2024 to the present.