IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KGR HOLDINGS, LLC AND KPF HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JAL EQUITY CORP, KAPPA GRAPHICS, LLC, and KAPPA PRODUCT FULFILLMENT SERVICES, LLC, <br><br> Defendants. | ) ) ) ) ) C.A. No. 25-101 (MN)-EDT ) ) **Original Version Filed:** ) September 16, 2025 ) **Public Version Filed:** ) September 23, 2025 ) ) ) ) ) |

**PLAINTIFFS' DISCOVERY DISPUTE LETTER**
(submitted pursuant to the Court's September 12, 2025 Oral Order)

Todd C. Schiltz (#3253)
Ryan M. Messina (# 6875)
FAEGRE DRINKER
BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
todd.schiltz@faegredrinker.com
ryan.messina@faegredrinker.com

*Attorneys for Plaintiffs*

Dated: September 16, 2025

Dear Judge Tennyson:

    This is a breach of contract and indemnification case arising out of an Equity Purchase Agreement ("EPA") pursuant to which plaintiffs sold 100% of the membership interests in Kappa Graphics, LLC ("Kappa Graphics") and Kappa Product Fulfilment Services, LLC ("Fulfillment") to JAL Equity Corp. ("JAL") on February 29, 2024. JAL has failed to make two $350,000 post-closing payments due to plaintiffs, one due on December 4, 2024 and another due on September 4, 2025, pursuant to Section 7.9 of the EPA. Per Section 7.3 of the EPA, JAL, Kappa Graphics, and Fulfilment must indemnify plaintiffs for the losses arising from JAL's breach.

    Prior to the January 23, 2025 filing of this lawsuit and again after, JAL conceded it owed the initial $350,000 payment. *See* Ex. 1 (Dec. 18, 2024 JAL email: JAL "[REDACTED]"); Ex. 2 (Dec. 23, 2024 JAL email: [REDACTED]); Ex. 3 (Feb. 21, 2025 JAL text message: "[REDACTED]").

    The present discovery dispute concerns (A) defendants' manual search for documents responsive to plaintiffs' second request for production, and (B) whether the corporate defendants must produce a witness to testify regarding four Rule 30(b)(6) deposition topics.

**Defendants' Belated Prior Breach Defense and RFPs Related Thereto**

    In the middle of this lawsuit, months after they answered and when supplementing prior discovery responses, defendants asserted for the first time that plaintiffs breached a restrictive covenant in Section 5.5(a)(iii) of the EPA, and that plaintiffs' alleged prior breach released defendants from their obligation to pay the $700,000. Ex. 4 at Interrog. 3. More specifically, defendants contend that plaintiffs induced a single third-party customer of defendants, Kappa Publishing, to reduce its volume of business with defendants, conduct defendants contend violates Section 5.5(a)(iii) of the EPA. Ex. 5 at Interrog. 17.[1]

    There is no merit to defendants' prior breach defense. Nothing in the record supports it and, in fact, the record shows otherwise. *See* footnote 1. Defendants offer only *ipse dixit*: because Kappa Publishing reduced its business with defendants, plaintiffs must have caused it. *See* Ex. 5 at Interrogs. 18 and 21. In addition, the defense makes no sense. The EPA gives plaintiffs earn out rights if Kappa Graphics and Fulfillment meet certain post-closing financial metrics. Any act by plaintiffs that would cause Kappa Publishing to reduce its volume of business with Kappa Graphics or Fulfillment would diminish plaintiffs' chances of receiving their post-closing earnout.

---

[1] Defendants first raised this defense approximately five weeks after JAL managing director Eran Salu advised Kappa Publishing president Steven Kotok that defendants "[REDACTED]" with Kappa Publishing and [REDACTED] Ex. 6 at JALPROD2000012. When drafting this message, Mr. Salu's internal communications acknowledge that [REDACTED] Ex. 7 at JAL002002. Mr. Salu's JAL colleague, Steve Paley, agreed that [REDACTED] and that "[REDACTED]" *Id*. Mr. Kotok responded by [REDACTED] Ex. 6 at JALPROD2000011, JALPROD2000013 and JALPROD2000024.

1

To prove defendants have no evidence supporting their newly minted prior breach theory, plaintiffs served out a second set of discovery. Ex. 5. The RFPs sought documents:

- supporting defendants' contention that plaintiffs "solicited and induced certain of Defendants' customers, including … Kappa Publishing, to materially change and reduce their business relationships with Defendants," Ex. 5, RFP 25;
- identifying each act that plaintiffs took to solicit or induce defendants' customers to reduce their business relationships with defendants, Ex. 5, RFP 27; and
- identifying any conduct by plaintiffs that constitutes a material breach of the EPA as alleged in the defendants' interrogatory responses, Ex. 5, RFP 29.

Plaintiffs also sought all communications between defendants and Kappa Publishing related to price and non-price term changes or other changes in their relationship. Ex. 5, RFP 30. Plaintiffs agreed to manually search for and produced documents in response to this request. Those documents include the information noted in footnote 1.

Defendants responded to RFPs 25, 27 and 29 by refusing to search for or produce any documents, Ex. 5, RFP 27, or agreeing to apply previously employed search terms that produced no responsive documents on these issues to the electronic files of Mr. Salu and JAL senior vice president Rachel Grossfeld, *id.*, RFPs 25 and 29; Ex. 8 at 2 ("we do believe that the search terms that were previously supplied are sufficient").

Defendants must do more to locate potentially responsive documents to these RFPs. Just as defendants manually searched for documents responsive to RFP 30, they should manually search for documents responsive to RFPs 25, 27 and 29.

Late yesterday, defendants agreed to conduct a manual review and claim to have located responsive documents through that process, Ex. 9 at 2; however, the extent and scope of defendants' manual review is not clear with respect to whose files they will search and what they will search for. Ex. 9 at 1. Defendants should be compelled to identify all custodians they believe might have documents responsive to RFPs 25, 27 and 29, and work with those custodians to identify documents responsive to those RFPs.

If defendants do not locate responsive documents, defendants should be directed to advise plaintiffs that they have no documents responsive to these requests.

**The Contested Rule 30(b)(6) Topics**

On August 25, 2025, plaintiffs served a Rule 30(b)(6) deposition notice on each of JAL, Kappa Graphics and Fulfillment. The JAL notice listed 30 testimonial topics, and the Kappa Graphics and Fulfillment notices listed 24 identical testimonial topics.

On August 28, 2025, defendants responded by objecting to 27 of the 30 topics directed to JAL and all 24 of the topics directed to Kappa Graphics and Fulfillment. Many of the objections were hyper-technical and appeared solely designed to interfere with plaintiffs' discovery efforts. Others were simply wrong, *e.g.*, defendants' objection that certain topics "improperly seek testimony regarding … the factual basis for [defendants'] claims and defenses" while simultaneously conceding that "[a] corporate designee is required to testify to facts known or reasonably available to the organization …."

In an effort to work through this issue and focus on the heart of the case, on September 4, 2025, plaintiffs proposed twenty-five revised topics. Defendants responded on September 11,

2

2025, accepting twenty-one of the twenty-five topics. Ex. 8.  Exhibit 10 lists the parties' agreed upon topics.  Defendants continue to object to the following topics:

- JAL's knowledge and interpretation of JAL's obligations under Section 7.9 of the Equity Purchase Agreement.
- [JAL, Kappa Graphics and Fulfillment's] knowledge and interpretation of Plaintiffs' obligations under Section 5.5(a)(iii) of the Equity Purchase Agreement.
- The reasons why payment was not made to Plaintiffs by December 31, 2024 as promised in the December 18 Email.
- The reasons why payment was not made to Plaintiffs by January 17, 2025 as promised in the January 6 Email.

These topics seek facts and other permissible testimony from a Rule 30(b)(6) designee: "A 'Rule 30(b)(6) designee …, in addition to testifying about facts within the corporation's knowledge, testifies about the corporation's subjective beliefs and opinions, and its interpretation of documents and events.'" *Delaware State Univ. v. Thomas Company, Inc.*, 2020 WL 6799605, at *58 (D. Del. Nov. 19, 2020) (citation omitted).

Ignoring this authority, defendants contend the above topics seek legal conclusions and contention-based testimony and District of Delaware case law prohibits plaintiffs from examining defendants' Rule 30(b)(6) designee about defendants' interpretation or construction of the EPA or why defendants believe it has been breached (or not).  Ex. 8.

Defendants' objection and proposed approach—which would preclude plaintiffs from asking defendants' designee why contractual provisions have or have not been breached—places an improper limit on permissible discovery. Plaintiffs are entitled to conduct discovery regarding relevant issues. Defendants' views on why Section 7.9 and 5.5(a)(iii) of the EPA have been breached are unquestionably relevant. Plaintiffs served contention interrogatories on these issues and received thin answers. Ex. 5 at Interrogs. 17-21. Plaintiffs seek to question defendants' designees further in the hope of obtaining more detailed information about the basis of defendants' prior breach claim.

Any concern about overburdening a Rule 30(b)(6) designee is not present here. The events are recent as the relevant time period is after the EPA was signed on February 29, 2024, the contractual provisions at issue are not complex and are limited to just Sections 7.9 and 5.5(a)(iii) of the EPA, and defendants intend to produce a single witness, Mr. Salu, as the designee for each corporate defendant and Mr. Salu is a graduate of University of Pennsylvania – The Wharton School and UC Berkeley School of Law.

A Rule 30(b)(6) designee "represents the corporation just as an individual represents him or herself at deposition." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). As a result, a designee must testify as to the corporation's knowledge, subjective beliefs, and opinions, as well as its interpretation of documents and events. *Id. See also Delaware State Univ.*, 2020 WL 6799605, at *58. The contested topics seek permissible testimony from a Rule 30(b)(6) designee. Defendants should be compelled to produce a witness to testify on their behalf as to these topics.

A form of Order effecting the relief sought herein is attached hereto.

Respectfully Submitted,

*Todd C. Schiltz* (#3253)